## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

MICHAEL FEUGET                                                    PETITIONER


V.                            NO. 5:15-CV-00388-BSM-JTR


WENDY KELLEY, Director,
Arkansas Department of Correction                        RESPONDENT


## <u>RECOMMENDED DISPOSITION</u>

## <u>INSTRUCTIONS</u>

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.    Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Michael Feuget ("Feuget"), a prisoner in the Arkansas

Department of Correction.[1]  *Doc. 1.*  Respondent has filed a Response, *Doc. 12,* and Feuget has filed a Reply, *Doc. 17.*  Thus, the issues are fully joined and ripe for resolution.

Before addressing the merits of Feuget's habeas claims, the Court will review the relevant procedural history of his underlying state court conviction.

On January 28, 2011 a jury in Pulaski County, Arkansas convicted Feuget of two counts of aggravated robbery and one count of theft arising from his armed robbery of Iberia Bank on January 15, 2010.  He was sentenced to a total of fifteen years of imprisonment.  *Doc. 11-13, Volume I at 86-88.*

At trial, Feuget admitted he was the person who robbed Iberia Bank on January 15, 2010, but claimed that he was not criminally responsible for his actions because he was involuntarily intoxicated or had a mental disease or defect. [2] According to Feuget, he lacked the capacity to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct because he experienced a "manic episode" caused by taking Zoloft, Adderall, and Deplin, three medications prescribed to treat his depression and ADD.  The jury rejected Feuget's

---

[1]  Craig Lambert represents Feuget in this action.

[2]  At trial, Feuget was represented by Justin Hurst and Q. Byrum Hurst.

2

defense and returned a guilty verdict.

Feuget appealed to the Arkansas Court of Appeals, where his attorney argued that: (1) one of his aggravated-robbery convictions was not supported by substantial evidence; and (2) he was prejudiced and entitled to a new trial because his psychiatrist, Dr. Joe Bradley, testified that he did not recall writing Feuget a prescription for Deplin, when other evidence showed that he in fact wrote the prescription.[3]

On February 29, 2012, the Arkansas Court of Appeals affirmed. *Feuget v. State*, 2012 Ark. App. 182, 394 S.W.3d 31 (2012) (hereinafter referred to as "*Feuget I*"). On April 19, 2012, the Arkansas Supreme Court denied Feuget's petition for review. *Doc. 12-9* (Letter Order).

On June 14, 2012, Feuget filed a Rule 37 petition for post-conviction relief in which he argued that his trial counsel was ineffective for: (1) failing to subpoena pharmacy records to rebut Dr. Bradley's testimony that he did not write Feuget a prescription for Deplin; (2) seeking a directed verdict that did not include a request to reduce the aggravated robbery charge to robbery; and (3) failing to seek a jury instruction on the lesser offense of robbery. *Doc. 12-10, Rule 37 Record, at 14-19*.

---

[3] On direct appeal and during his post-collateral proceedings in state court, Feuget was represented by Jeffrey Rosenzweig

On August 2, 2013, following an evidentiary hearing, the trial court denied Feuget's Rule 37 petition.[4] Feuget appealed to the Arkansas Supreme Court. On February 12, 2015, the Court affirmed the trial court's decision denying Rule 37 relief. *Feuget v. State*, 2015 Ark. 43, 454 S.W.3d 374 (hereinafter referred to as "*Feuget II*").

On December 14, 2015, Feuget filed this § 2254 action within the applicable one year statute of limitations. 28 U.S.C. § 2244(d)(1).

For the reasons discussed below, the Court recommends that all of Feuget's habeas claims be denied and the case be dismissed, with prejudice.

## II.    Analysis of Feuget's Habeas Claims

In his habeas Petition, Feuget asserts four ineffective assistance of counsel claims, which both parties refer to in their habeas papers as Claims I-A, I-B, I-C and I-D. These four claims are as follows:

**I-A.** Feuget's trial counsel was ineffective for failing to obtain available evidence to impeach the allegedly false testimony presented by psychiatrist Dr. Joe Bradley on an issue crucial to Feuget's defenses.

**I-B.** Feuget's trial counsel was ineffective for: (1) making a motion for directed verdict that failed to include a request that the charges against him be reduced from aggravated robbery to robbery; and (2) failing to request a jury instruction on the lesser-included offense of robbery.

---

[4] *Doc. 12-10 at 28-31.*

4

**I-C.**  Feuget's trial counsel was ineffective for failing to introduce testimony and other evidence of Feuget's sound financial condition at the time of the bank robbery.

**I-D.**  Counsel were ineffective for failing to present testimony from Feuget's friends and business associates during the sentencing phase of his trial.

Finally, Feuget asserts an aguably new habeas claim which he raises for the first time in this habeas action:  the State elicited "false" testimony from Dr. Bradley, which it then relied on to support false arguments to the jury in violation of Feuget's Fourteenth Amendment constitutional right to due process and a fair trial.  The Court will refer to this final habeas claim as "Claim II," just as the parties do in their habeas papers.

In the following analysis, the Court will explain why each of Feuget's habeas claims either fails on the merits or is barred by the doctrine of procedural default.

**A.    Claim 1-A and Claim II**

Claims I-A, an ineffective assistance of counsel claim, and Claim II, a fair trial claim, both stem from the same allegedly "false" testimony of Dr. Bradley, who was called by the State as a rebuttal witness.[5]  In Claim I-A, Feuget asserts his trial counsel was ineffective in failing to impeach Dr. Bradley's testimony that he did not write Feuget a prescription for Deplin.  In Claim II, Feuget asserts that the State

_____

[5]  As indicated earlier, Dr. Bradley is a psychiatrist and was one of Feuget's treating physicians at the time of the bank robbery.

5

knowingly elicited this "false" testimony from Dr. Bradley and then relied on it to

argue to the jury that Feuget was guilty of the charged crimes.

On direct appeal, the Arkansas Court of Appeals engaged in a lengthy

discussion about Dr. Bradley's rebuttal testimony and rejected Feuget's argument

that it entitled him to a new trial:

> At trial, appellant raised the affirmative defense of involuntary intoxication, pursuant to Arkansas Code Annotated section 5-2-207 (Repl. 2006), claiming that his actions resulted from medications he was taking at the direction of his psychiatrist. Multiple "experts" were called to testify regarding this issue, including: (1) Dr. Bob Gale, a neuropsychiatrist; (2) Dr. Lisa Doguet from the Arkansas State Hospital; (3) Dr. Kim Light, a professor of pharmacology at the UAMS pharmacy school; and (4) Dr. Joe Bradley, appellant's previous treating psychiatrist. Dr. Bradley was called last, as a rebuttal witness by the State, and his testimony and the ensuing procedural issues are the primary focus of appellant's argument.
>
> Dr. Bradley testified that he had treated appellant since November 2006 for attention deficit disorder (ADD) and depression. Dr. Bradley chronicled his treatment of appellant, including changes and dosage adjustments of appellant's medications. When Dr. Bradley saw appellant on December 2, 2009, appellant was taking 200 milligrams of Zoloft, although Dr. Bradley had prescribed only 100 milligrams. Appellant had increased the amount he was taking on his own when he felt the lesser dosage was not working. He also was taking Adderall, which he had been taking since January 2008. Finally, at the December 2009 visit, Dr. Bradley began appellant on Deplin, a folic-acid supplement that can help with the absorption of the chemicals in the other medications he was taking. Dr. Bradley gave appellant four sample bottles of Deplin, directing him to take one pill daily for four weeks. Dr. Bradley testified that he did not recall writing appellant a prescription for Deplin, but that he set an appointment for a month later so he could determine if the Deplin was having any effect on appellant's

6

symptoms.

Dr. Bradley next saw appellant on January 6, 2010, less than two weeks before the robbery. Because appellant reported no benefit from the Deplin, Dr. Bradley testified that he recommended that he stop taking it. He continued appellant on the Zoloft and Adderall. Evidence indicated that, at that visit, appellant did not report any suicidal thoughts, issues with sleep, hallucinations, or psychotic symptoms. On cross-examination, when defense counsel asked Dr. Bradley if he would dispute that appellant had had a prescription for Deplin filled on January 7, 2010, Dr. Bradley replied that he *may* have given appellant a prescription along with the samples so that appellant could get more in case the medication worked but that he did not recall giving appellant a written prescription for that drug. Appellant then called appellant's wife, Mrs. Feuget, a nurse, as a surrebuttal witness to testify that, on January 7, 2010, she had filled at Walgreens a prescription for Deplin that appellant brought home from his appointment with Dr. Bradley the previous day.

*Feuget I*, 2012 Ark. App. at *7-8.

In his Rule 37 petition, Feuget argued that his trial counsel was ineffective for failing to properly impeach Dr. Bradley's allegedly "false" testimony.  In affirming the trial court's denial of Rule 37 relief, the Arkansas Supreme Court held that Feuget had failed to satisfy either of the essential elements necessary to sustain such a claim under *Strickland v. Washington*, 466 U.S. 668 (1984):[6]

For his first point, Feuget classifies Dr. Bradley's testimony as false and claims that the failure to call a records custodian and subpoena pharmacy records   to verify that Feuget was given a prescription for

---

[6] *Strickland* requires a defendant seeking post-conviction relief in state or federal court, based on ineffective assistance of counsel, to show that:  (1) trial counsel's representation fell below an objective standard of reasonableness; *and* (2) but for trial counsel's errors, the result of the trial would have been different.

Deplin a week before the robbery vitiated his defense of involuntary intoxication. We disagree.

. . .

In this case, Feuget has demonstrated that the pharmacy witness would have authenticated his prescriptions and contradicted Dr. Bradley's testimony; however, we are not of the opinion that counsels' failure to call the witness was such an unreasonable lapse in professional judgment that Feuget was denied effective counsel.

. . .  In this case, Dr. Bradley testified at length concerning Feuget's multiple medication changes over a three-year period, and he readily acknowledged that it was possible he had also written Feuget a prescription for Deplin in addition to providing him with samples of the drug. Feuget presented rebuttal testimony from his wife that he had received and she had filled a prescription for Deplin approximately one week before the robbery. Feuget, himself, also testified to this fact. Feuget's expert similarly testified that Feuget had been prescribed Deplin and was taking it at the time of the robbery, as did Dr. Lisa Doguet, who performed a court-ordered evaluation of Feuget to determine his competency to stand trial. *In short, Feuget presented the same evidence to which a pharmacy witness would have testified if one had been called, and we cannot conclude that failing to call an additional witness on the topic rises to the level of ineffective assistance of counsel.*

Furthermore, under our standard or review, Feuget must demonstrate actual prejudice resulting from his counsel's failure to call a witness to verify the date of his prescription. Mere allegations that the jury would have been swayed by additional testimony are conclusory. *Wainwright,* 307 Ark. at 579, 823 S.W.2d at 454. Feuget has failed to show how presenting cumulative testimony regarding the date of his prescription would have created a reasonable probability that the outcome of his trial would have been different.

*We cannot ignore that although Dr. Bradley admitted that he was mistaken about whether he had actually written a prescription for Deplin, he also testified that studies had shown that the dosage of Deplin he prescribed would only have had a placebo effect. He also*

8

*reiterated that Feuget reported that the Deplin had minimal effect. The other expert witnesses at trial did not contest that Feuget was taking prescription Deplin at the time he committed the robbery; they simply did not believe that the Deplin made a difference.* For example, Dr. Kim Light, a pharmacologist, testified that the Deplin would have had no impact and that Feuget was not intoxicated on the drugs that he was taking at the time of the robbery. Dr. Doguet accepted that Feuget was taking Deplin and that he was intoxicated, but she still testified that Feuget clearly appreciated the criminality of his actions and was capable of conforming his conduct to the law based on his behavior before, during, and after committing the crime. Feuget's own expert, Dr. Gale, testified that Feuget had been given a prescription for Deplin a few days prior to the robbery; however, even Dr. Gale acknowledged that there was some dispute among the medical community as to whether Deplin would enhance the effects of the other medications that Feuget was taking. *Considering the other evidence presented to the jury, Feuget is unable to show the existence of a reasonable probability that additional testimony showing that the prescription for Deplin was filled approximately one week before the robbery would have resulted in a different outcome.*

*Feuget II*, 2015 Ark. 43 at *4–7 (emphasis added).

Having explained the circumstances giving rise to Claim I-A and Claim II, the Court will now analyze the merits of each of those claims.

### (1) Claim I-A

The Arkansas Supreme Court, in denying Feuget's Rule 37 ineffective assistance of counsel claims, correctly identified *Stickland* as the controlling law governing that claim. *Feuget II*, 2015 Ark. 43 at *3-4. Feuget argues the Court's rejection of his ineffective assistance claim "is based on an unreasonable application of *Strickland*." To obtain habeas relief on a claim of error which was previously

9

adjudicated in state court, Feuget must "show that the state court's ruling on the claim being presented in federal court was so lacking that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (internal quotations and citation omitted).   As the Court noted in *Harrington v. Richter*, 562 U.S. 86, 102 (2011), "this standard is difficult to meet . . . because it was meant to be." [7]   Thus, Feuget must demonstrate that the Arkansas Supreme Court *unreasonably applied Strickland*, as to both of its dual findings that Feuget's counsel's performance was not objectively unreasonable *and* that the alleged error resulted in no prejudice to the defense.  The Court in *Strickland* noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be

---

[7]  Under this onerous standard of review, a federal court will not grant habeas relief unless a state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)- (2).  A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite that of the United States Supreme Court on a question of law, or reaches a decision contrary to the United States Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court decision involves an "unreasonable application" of federal law when it identifies the correct legal rule, but unreasonably applies it to the facts.  *Id.* at 407.  "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011).

Finally, the state court's findings of fact are presumptively correct, and the habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (*quoting* 28 U.S.C. § 2254(e)(1)).

followed." *Strickland*, 466 U.S. at 697.[8]  Because it is easier to dispose of Feuget's first ineffective assistance of counsel claim on the ground that he has failed to establish that he suffered "prejudice" under *Strickland*, this will be the focus of the analysis that follows.

Feuget argues that Dr. Bradley's testimony prejudiced the outcome of his trial because it undercut his proof that his intoxication was involuntary.[9]  In doing so, Feuget *ignores* the mountain of other testimony that strongly negated his involuntary intoxication defense.  Thus, only speculation and wishful thinking support Feuget's argument that Dr. Bradley's testimony caused him to suffer *Strickland* prejudice, *i.e.*, the jury would have acquitted him on his involuntary intoxication defense, but for Dr. Bradley's testimony.

In addition to establishing that he was intoxicated, Feuget had to establish that he "lacked the capacity to conform his conduct to the requirements of the law or [to]

─────────────────────

[8] In *Feuget II*, Justice Danielson wrote a separate concurring opinion in which he "[took] issue with the majority's seeming conclusion that trial counsels' decision not to further challenge or impeach Dr. Bradley's testimony was a matter of trial strategy or did not rise to the level of ineffective assistance of counsel because there was other testimony presented on the issue." *Feuget II*, at *11-12 (J. Danielson, concurring).  However, *he stopped short of finding counsels' performance was deficient*, because he determined the issue was "irrelevant" in light of Feuget's complete failure to establish "a reasonable probability that the outcome of his trial would have been different, such that he can satisfy the prejudice requirement of *Strickland*."  *Id.* at *12.

[9] Near the end of Dr. Bradley's testimony, he responded "No, sir" to the prosecutor's question:  "On January 6th of 2010, was he taking Deplin at your direction?"  *Doc. 13, Vol. 4 at 114.*

appreciate the criminality of his conduct." AMCI 2d 605 (involuntary intoxication); AMCI 2d 609 (mental disease or defect).[10] Feuget relied primarily on his retained expert, Dr. Gale, to provide that proof. A fair reading of Dr. Gale's trial testimony reveals that it was weak, contradicted by testimony from other expert witnesses, and contrary to common sense. For example, Dr. Gale offered the entirely conclusory opinion that Feuget was unable to conform his conduct to the requirements of the law at the time of the robbery, despite the following *undisputed facts*: (1) Feuget drove around the bank waiting for people to leave before committing the robbery; (2) he removed the license plate from his vehicle; (3) he parked his vehicle up the street from the bank instead of using the bank parking lot; (4) he left his car running while he committed the robbery; (5) he disguised himself by wearing gloves, a hat and sunglasses when he entered the bank; (6) he placed a gun in the waistband of his pants; and (7) once inside the bank, he threatened the employees by telling them that, if they failed to cooperate, he had their vehicle license plates and knew where they lived. As other expert witnesses noted in their testimony, *none* of those facts were consistent with the actions of an involuntarily intoxicated person who was incapable of "[appreciating] the criminality of his conduct." AMCI 2d 605.

---

[10] The jury was given both of those instructions at Feuget's request. *Doc. No. 13, Vol. 5 at 1409, 1412*.

Finally, Feuget's defense theory was contrary to common sense.  In essence, he asked the jury to believe that he had a "manic episode," caused by the interactions of his prescription medications, which was so severe that he could not appreciate the criminality of his conduct in committing a *carefully planned* bank robbery.[11]   In short, Feuget's affirmative defenses of mental defect or involuntary intoxication were so far-fetched as to strain the credulity of any jury.  Thus, the Arkansas Supreme Court made an *entirely reasonable decision* in concluding that Feuget failed to prove that his attorneys' allegedly deficient performance resulted in *Strickland* prejudice.  This makes it unnecessary for the Court to consider whether the Arkansas Supreme Court unreasonably applied *Strickland* to conclude that Feuget's trial counsel's performance was "objectively reasonable."

Accordingly, Feuget's first ineffective assistance of counsel claim is without merit and should be denied.

### (2)    Claim II

In his habeas Petition, Feuget asserts an arguably new claim that, by knowingly eliciting "false" testimony from Dr. Bradley and then using that

---

[11]  Feuget asserts that he "spontaneously" decided to rob a bank.  Regardless of the length of time he contemplated the robbery, the steps he took to avoid detection:  (1) are consistent with careful planning which was designed to help him get away with the crime; and (2)  demonstrate that he was aware that what he was doing was unlawful.

testimony to make "false" arguments to the jury, the State violated his Fourteenth Amendment right to due process and a fair trial. *Doc. 1 at 17*. While Respondent argues that this new claim is procedurally defaulted, because it was not "fairly presented" in state court, she also addresses the claim on the merits and suggests it may be more efficient for the Court to resolve the claim on that basis, rather than addressing the more complex issue of procedural default. The Court agrees.[12]

Relying on *Napue v. Illinois*, 360 U.S. 264 (1959), Feuget argues that the State: (1) knowingly elicited "false" testimony from Dr. Bradley that he did *not* prescribe Deplin during Feuget's January 6th office visit; and (2) relied on that "false" testimony to undercut Feuget's involuntary intoxication defense in closing argument.[13]

_____

[12] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Trussell v. Bowersox*, 447 F.3d 588, 590 (8th Cir. 2006), cert. denied, 549 U.S. 1034 (2006) (holding that procedural default is not a jurisdictional bar, and federal courts can address the merits of an apparently defaulted claim "in the interest of judicial economy").

[13] Accordingly to Feuget, the prosecutor allegedly "capitalized" on Dr. Bradley's "false" testimony by making the following argument to the jury:

> And you heard him say that the defendant said, "Well, the Deplin didn't really work so I'm not using that anymore." And you heard Dr. Bradley say, "And it was my recommendation at that point that he not use the Deplin anymore." He was still using it and that was outside of Dr. Bradley's recommendation. I mean, ladies and gentleman, what the defense is trying to do here, just like Dr. Gale, is throw Dr. Bradley under the bus, right?

*Doc. 13, Vol. 5 at 1317.*

Respondent contends that the facts in this case are nothing like those in *Napue*, where a key prosecution witness falsely testified that he had received no promise of consideration for his trial testimony. The prosecutor *knew* this testimony was false, but he did nothing to correct the record or bring the false testimony to the attention of the court. *Id*. at 265. Thus, unlike in this case, in *Napue* it was *undisputed* that the prosecutor knew and permitted a witness for the state to offer perjured testimony. Because "a State may not knowingly use false evidence, to obtain a tainted conviction," the Court in *Napue* granted habeas relief. *Id*. at 269.

Here, there is *no evidence* the State *knowingly* presented false testimony from Dr. Bradley. Before he took the stand, neither the State nor Feuget's counsel were provided with a copy of the Deplin prescription written by Dr. Bradley on January 6, 2017. During his testimony, Dr. Bradley appeared to be referring to his office notes, which did *not* reflect that he had written a prescription for Deplin during Feuget's January 6, 2010 office visit. Dr. Bradley's notes further reflected that Feuget had reported "minimal benefit" from the trial samples of Deplin that he had given to him. Thus, Dr. Bradley's trial testimony was *consistent with* his notes. [14]

"[A]bsent a finding the prosecutor knew of perjured testimony" when it was

---

[14]  A copy of the prescription and treatment notes were introduced during the hearing on Feuget's Motion for New Trial. *Doc. No. 13, Vol. 5 at 1519, 1521*.

presented, Feuget must show the false testimony '"would be likely to result in an acquittal."'  *Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006) (*citing United States v. Duke*, 50 F.3d 571, 576-77 (8th  Cir. 1995)).  As previously explained, in discussing Claim I-A, Feuget has failed to make such a showing.[15]

Finally, the Court finds it troubling that Feuget continues to make such a serious allegation against the prosecutor and Dr. Bradley with *nothing* in the record directly supporting his claim and an *explicit finding* by the Arkansas Court of Appeals that Feuget had *failed to prove* that Dr. Bradley "committed perjury by testifying that he *did not recall* writing a prescription for Deplin on January 6, 2010." *Feuget I*, 2012 Ark. App. 182, *14 (emphasis in original).  Likewise, in *Feuget II*, the Arkansas Supreme Court ruled that Feuget had *failed to demonstrate* "actual prejudice" on the related question of whether his trial counsel was ineffective for not presenting testimony to contradict Dr. Bradley's allegedly "false" testimony.  Thus, in a myriad of contexts, the trial court, the Arkansas Court of Appeals, and the Arkansas Supreme Court *all* have held that Feuget suffered *no prejudice* from Dr.

---

[15]  In ruling to deny the motion for new trial and the Rule 37 petition, the trial court ruled that Feuget suffered no prejudice as a result of Dr. Bradley's testimony.  On direct appeal, the Arkansas Court of Appeals upheld the trial court's finding that Feuget "suffered no prejudice from Dr. Bradley's testimony that he did not recall writing appellant a prescription for Deplin." *Feuget I*, 2010 Ark. App. 182, at *13.  Moreover, the Court determined that "the issue of whether Dr. Bradley remembered writing a prescription for [Deplin was] immaterial." *Id*.

Bradley's *mistaken* – not false – testimony that he did not prescribe Deplin for Feuget.  Those findings are fully supported by the record and are entitled to deference by this Court.  28 U.S.C. § 2254(d)(1);  *Siers v. Weber*, 259 F.3d 969 (8th Cir. 2001) (holding that district court failed to give the proper deference to state court finding that petitioner suffered no prejudice from his attorney's failure to interview alibi witness because ruling was sufficiently reasonable to be entitled to deference).

Because there is no reasonable probability that the jury's verdict was affected by Dr. Bradley's mistaken testimony about the Deplin prescription, the Court concludes that Claim II is without merit and should be denied.

### B.     Feuget's Remaining Ineffective Assistance of Counsel Claims

#### (1)    Claim I-B

Feuget contends that his trial counsel was ineffective for:  (1)  not seeking to reduce the "aggravated robbery" charges to "robbery" as part of his motion for directed verdict; and (2)  failing to offer a jury instruction on "robbery," as a lesser-included offense.  *Doc. 1 at 11-14*;  *doc. 17 at 1*.  Because it is more efficient to do so, the Court will analyze this claim on the merits, rather than considering Respondent's alternative argument that Feuget has procedurally defaulted portions of this claim.

The state trial court specifically addressed both aspects of Feuget's ineffective

assistance of counsel claim in denying Rule 37 relief:

> Defendant's attorneys moved for a directed verdict on the charge of Aggravated Robbery.  Defendant alleges that his attorneys were ineffective in failing to move for reduction of the charges to robbery from aggravated robbery at the time of the directed verdict motions. However, the trial transcript establishes that the defendant's counsel had conversations with the defendant in which they asked Defendant if he wanted to move for reduction of the charge to robbery, and the defendant responded that he did not.

> Both the defense counsel and the State stipulate that during the trial there was witness testimony given demonstrating that the defendant never displayed a gun.  It is reversible error to refuse to give an instruction on a lesser-included offense when the instruction is supported by even the slightest evidence. *Cook v. State*, 77 Ark. App. 20, 73 S.W.3d 1 (2002).  In light of the testimony given, including the lesser offense of robbery in the jury instructions would have been proper.  The Court finds that both the defendant and his wife were involved in preparation for the trial.  During the trial, the defendant's attorneys had created lesser included instructions, including instructions for Robbery.  Counsel testified that he prepared the lesser included instructions, but the defendant did not want the instruction included [omitting citation].  During this testimony,

*Doc. 12-10 at 30-31* (Order of state trial court denying Rule 37 relief).

In affirming the trial court's denial of Rule 37 relief, the Arkansas Supreme Court did not specifically discuss Feuget's argument that his trial counsel was ineffective for failing to move, on directed verdict, to reduce the "aggravated robbery" charge to "robbery."[16]  However, it explicitly addressed and rejected

---

[16]  This ineffective assistance of counsel claim was based on a tactical decision made by Feuget's trial counsel.  By not addressing this issue, the Court, *sub silento*, rejected the claim. *See*

Feuget's argument that his trial counsel was ineffective for failing to request a jury

instruction for robbery:

> The record reflects that counsel discussed with Feuget the possibility of moving to reduce the charges and instructing the jury on the lesser-included offense of robbery and, in fact, recommended this strategy. Counsel even went so far as to prepare the actual instruction. However, the record reflects that Feuget intentionally chose to forego this option because he believed the jury would acquit, and he did not want to give them another option to convict him of a lesser-included offense. Feuget cannot now claim that he received ineffective assistance of counsel when he made the very decision - about which he now complains - against the advice of counsel.

*Feuget I*, 2015 Ark. at 8.

 Feuget does *not* dispute that he instructed his trial counsel *not* to offer the

lesser-included jury instruction.[17]  Instead, he argues that his counsel was ineffective

because the decision on whether to offer the lesser-included jury instruction was

"non-delegable," which meant his trial counsel was *legally obligated* to ignore

---

*Strickland,* 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

[17]  The record demonstrates that Feuget, after being fully advised by his counsel of the pros and cons of including a jury instruction on the lesser-included offense of robbery, decided the better course was to "hold the jury's feet to the fire, even it meant a risk" and force it to decide between only two options – aggravated robbery or acquittal.  *Doc. 12-10 at 84* (testimony of Feuget's trial counsel during Rule 37 hearing); *see also Doc. No. 13, Vol. 4 at 1138* (Responding to the trial court's inquiry regarding jury instructions, defense counsel stated:  "Mr. Feuget told me this morning that he does not wish to offer any lessor includeds.");  *Doc. 12-14* (summarizing Feuget's trial counsel's consultations with Feuget on the issue).

Feuget's decision *not* to request a lesser-included instruction on the aggravated robbery charge.

The purported legal basis for this argument is Rule 1.2(a) of the Arkansas Model Rules of Professional Conduct ("Model Rules"), which states that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." According to Feuget's tortured construction of this Rule, because it is *silent* on a criminal defense attorney's obligation to "abide by the client's decision" to forego submitting a lesser-included offense instruction, this means a defense lawyer can and should *disregard* such a decision by his client and substitute his own professional judgment, even if it  means tendering the instruction over his client's objection. Thus, according to Feuget, Rule 1.2 authorizes a criminal defense lawyer to ignore or over-ride *any* of his client's decisions on how he or she would like the defense of his or her case to proceed *except* client decisions on whether to enter a plea, waive a jury trial, or take the stand to testify.

In advancing this interpretation of Model Rule 1.2, Feuget ignores the first sentence of the Rule itself, which states the following:

> . . . *a lawyer shall abide by a client's decisions concerning the objectives of representation*, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued.

Model Rule 1.2 (emphasis added).

Based on the record, it appears Feuget's trial counsel believed it was in Feuget's best interest to request the lesser-included jury instruction, while Feuget believed not requesting the instruction gave him the best change for an acquittal.  In such a situation, the first sentence of Rule 1.2 makes it clear that, after the attorney has "explain[ed] a matter to the extent reasonably necessary to permit the client to make informed decisions,"[18] the attorney "shall abide by the client's decision" on the matter.  Thus, properly construed, Rule 1.2 in no way supports Feuget's contention that the decision on whether to submit a lesser-included jury instruction was non-delegable and that his trial counsel was legally obligated to ignore Feuget's decision on the matter and request a lesser-included instruction.[19]

Feuget also cites *Patton v. State*, 2013 Ark. App. 583, 585 (2013), suggesting that it stands for the proposition that when a lesser-included instruction "is warranted, it is incumbent upon counsel to request that instruction." *Doc. 1 at 13-14*.  In *Patton*, the issue was whether the *trial court* should have given a lesser-

---

[18]    Model Rule 1.4(a)(5).

[19]    In making this argument, Feuget fails to mention that he was intelligent and well educated, having obtained a Master of Business Administration after completing college. *Doc. No 13, Vol. 3 at 847*.  Given those facts, it is preposterous for Feuget to argue that, after his trial counsel fully informed him of the pros and cons of requesting a lesser-included offense jury instruction, they were legally obligated to reject his fully informed decision not to request such an instruction.

included jury instruction, *sua sponte*. The Arkansas Court of Appeals held that, under well-established Arkansas law, *if* such an instruction was to be given, it had to be offered by defense counsel, and if no such request was made, the trial court was not, *sua sponte,* obligated to give the lesser included instruction. It also made clear "that the decision of whether to request a lesser-included-offense instruction is a matter of trial tactics, with which the court should not interfere." *Patton*, 2013 Ark. App. 583, \*2-3 (*quoting* 75A Am. Jur. 2d Trial § 1199 (2013)). Thus, nothing in *Patton* supports Feuget's contention that when a lesser-included instruction "is warranted, it is incumbent upon counsel to request that instruction." *Doc. 1 at 13-14*.

Arkansas law holds that "competent counsel may elect not to request an instruction on lesser included offenses." *Henderson v. State*, 281 Ark. 406, 408 (1984) (omitting citation). Taking such an "all-or-nothing" approach is a well-recognized trial tactic that is entirely permissible, as long as counsel has fully informed his client on the pros and cons of such an approach.

Finally, under well established federal law, there is no "constitutional requirement that lesser-included offense instructions be given in noncapital cases." *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007) (omitting citations). Accordingly, Feuget cannot prove that his trial counsel was *constitutionally*

22

*ineffective* for going along with a reasonable tactical decision which Feuget wanted him to make, to forego an instruction on "robbery" in hopes that it would increase his chances for acquittal on the "aggravated robbery" charges.[20]  While Feuget's decision may have been contrary to his counsel's advice that the safest approach was to offer the lesser-included instruction, he must now live with the consequences of that decision.

Thus, the Court concludes that Claim I-B is without merit and should be dismissed.

### (2)    Claim I-C

Feuget argues his trial counsel was ineffective for failing to introduce testimony and "other evidence" of Feuget's solid financial condition to bolster his affirmative defense that he had no need to rob a bank and that only his impaired mental state caused him to commit the crime.[21]  *Doc. 1 at 13-14.*  Feuget failed to assert this claim in his Rule 37 petition, and he now acknowledges this claim is procedurally defaulted unless he can come within the equitable exception created by

---

[20]  As indicated earlier, in his trial testimony, Feuget admitted that he was intelligent and educated, with an MBA.  *See Doc. No. 13, Vol. 3 at 847.*

[21]  Feuget argues that his attorney should have introduced into evidence his tax records, pay stubs, 401K documents, life insurance policies showing substantial cash values, and other financial documents, and elicited testimony from him and his wife about their solid financial condition.  *Id. at 14-15.*  However, in making this argument, Feuget has offered *no evidence* that those financial documents exist, much less that they show he was in sound financial condition when he robbed the bank.

the Court in *Martinez v. Ryan,* 566 U.S. 1 (2012) and its progeny. *Doc. 17 at 5.*

Even if the Court were to assume that such financial evidence existed and that it was not presented by Feuget's attorney during Feuget's trial, it still would not present a "substantial" ineffective assistance of counsel claim within the meaning of *Martinez v. Ryan*, 566 U.S. at 14. As applied in Arkansas habeas cases, the *Martinez* exception only allows a federal court "to find 'cause,' thereby excusing a habeas petitioner's procedural default, where: (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (*quoting Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013); *see Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (applying *Martinez* and *Trevino* to Arkansas proceedings).

To satisfy the first element of *Martinez*, Feuget must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Martinez,* 566 U.S. at 14; *Dansby,* 766 F.3d at 834. For an ineffective assistance of counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez,*

24

566 U.S. at 14-16. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective assistance of counsel claim is procedurally defaulted and cannot be properly considered in a § 2254 habeas action. *Id.*

The parties dispute whether an ineffective assistance of counsel claim can be deemed "substantial" without a showing of prejudice by a habeas petitioner. Feuget argues that, for his ineffective assistance of counsel claim to be actionable, he is only required to satisfy the standard for issuance of a Certificate of Appealability, without demonstrating how he was "actually prejudiced" by the ineffective representation. *See Doc. 17 at 6*; and *Martinez*, 566 U.S. at 14. The only case cited by Feuget to support his position is *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (*en banc*), a case that was decided in four separate opinions, none of which commanded a majority.

Shortly after the *Detrich* decision, another panel of the Ninth Circuit held that a majority of the *en banc* panel in *Detrich* "explicitly rejected the view expressed" in the *plurality opinion* that a petitioner "need not show actual prejudice resulting from his PCR counsel's deficient performance." *Clabourne v. Ryan*, 745 F.3d 362, 376 (9th Cir. 2014) (omitting internal quotations and citations), *overruled on other grounds* by *McKinney v. Ryan*, 813 F.3d 798, (9th Cir. 2015).

The Court in *Clabourne* also explained the *two layers of prejudice* which must be established in a situation, like this one, where a petitioner contends that his Rule

37 counsel was ineffective for not asserting a claim of ineffective assistance committed by his trial counsel:

> Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a reasonable probability that the result of the post-conviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.

*Clabourne*, 745 F.3d at 377.

While the Eighth Circuit has not yet ruled on this issue, this Court predicts that it will follow *Clabourne* and hold that, for a habeas petitioner to show a "substantial" ineffective assistance of counsel claim under *Martinez*, he must make a preliminary showing of actual prejudice resulting from the deficient performance of his trial counsel. Thus, the Court concludes that Feuget is required to make a "substantial" showing with respect to both the performance and prejudice prongs of the *Strickland* standard.[22]

---

[22] To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must establish that his attorney's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms," and the "professionally unreasonable" conduct of counsel "prejudiced the defense."  *Strickland*, 466 U.S. at 687-88, 691-92.  Prejudice" is defined as "a

As a preliminary matter, Feuget offers *no facts* to support his allegation that he was in "sound financial condition" at the time he robbed the bank. Submitting factual support for his claim is part of the required showing of substantiality. *Martinez*, 566 U.S. at 14-16.

The absence of *any facts* to support Feuget's claim is particularly troubling in light of the undisputed evidence in the record that *Feuget and his wife were in bankruptcy when the robbery took place*.[23]  In late 2006, the Feugets filed for bankruptcy protection with almost $200,000 in credit card debt.[24]  They were still making payments on their Chapter 13 bankruptcy plan at the time of the January 15, 2010 robbery.  Feuget's trial counsel attempted, unsuccessfully, to keep the State from cross-examining Feuget about a March 30, 2010 letter he wrote to his bankruptcy attorney in which Feuget admitted he and his wife had *no net income in 2009*, the year before the robbery:

---

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  If a prisoner fails "to establish either Strickland prong [it] is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011); *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.")

[23] *Doc. 13, Vol. 3 at 789-797; 804-808, 809-814; 874, 880-882 (testimony of Feuget's wife and Feuget);  Vol. 4 1019-1021 (bankruptcy-related exhibit).*

[24]  Feuget's wife, Michelle, testified that they had funded a business using personal credit cards.  When the business failed, they filed for bankruptcy.  *Doc. 13, Vo. 3 at 789-791.*

27

We are writing in response to conversations on March 29, 2010. We are seeking relief of current monthly settlement by means of immediate payment reduction. Please accept this request and additional explanation.

1.    Loss of income.

Due to a declining economy and lack of business/marketing capital, Michael's income from the investment and insurance business has been less than 25% of past and projected future levels. Net income has been negative since August 2009 and actual income received in 2009 was $0 forcing us to close the doors. As of yet Michael is unable to find a job.

2.    Current Income.

Our current family income is limited to Michelle's salary as a Registered Nurse with Christus Health in Texarkana. Net income is approx. $2000 per month.

3.    Payment burden.

Over the past year the current monthly payment of $1,183 has caused our financial situation to digress below pre-filing levels. We are now down to one vehicle, homeless and forced to reside with family members in Nashville, Arkansas.

Please assist and advise of remedies. Thank you.

Michael A. Feuget

*Doc. 13, Vol.4 at 1020-1021.*

Feuget's March 30, 2010 letter, written only 10 weeks after the January 15, 2010 bank robbery, details the serious financial difficulties he was having in making the payments due in his Chapter 13 bankruptcy. In light of the content of that letter,

it is preposterous for Feuget to argue that his trial counsel was ineffective for failing to introduce into evidence *non-existent* financial records[25] that supposedly would have established that Feuget was in "very sound financial condition"[26] at the time of the bank robbery.  It is even more preposterous for Feuget to argue that his Rule 37 counsel was ineffective for *not* arguing that his trial counsel was ineffective for failing to introduce "testimony and other evidence" of Feuget's "very sound financial condition," *a demonstrably false proposition.*

Additionally, Feuget has failed to make any showing that, *if* such evidence had been available and had been presented to the jury, it would have resulted in him being acquitted.  Importantly, Feuget did not need to present evidence of lack of financial motive to prevail on his affirmative defenses.  His entire defense theory was that his robbery of the bank was spontaneous, irrational, and driven by a prescription-drug fueled manic episode.  This allowed defense counsel to argue that "[financial] motive is not an element in this case"[27]  and to object to evidence the State wanted to introduce about Feuget's bankruptcy and related financial problems.

---

[25]  No such financial records were introduced into evidence at trial or during Feuget's Rule 37 proceeding.  Similarly, no such financial records have been made a part of the record in this habeas action.  Thus, the only conclusion the Court can draw is that no such records exist.

[26]  *Doc. 1 at 15.*

[27]   *Doc. 13, Vol. 3 at 879.*

*If* Feuget's trial counsel had affirmatively attempted to introduce evidence of Feuget's allegedly "very sound financial condition," as Feuget now claims he should have, he would have given up all grounds for objecting to the State's evidence of Feuget's Chapter 13 bankruptcy and it would have opened the door to the State putting on even more evidence regarding the financial stress Feuget was experiencing at the time of the bank robbery. Finally, it would have required Feuget's trial counsel to explain to the jury why everything in Feuget's Mach 30, 2010 letter to his bankruptcy was a lie.

Thus, even *if* the Court assumes records existed, at the time of trial, that reflected Feuget's "very sound financial condition" when the robbery occurred, the pros and cons of opening such a potentially damaging can of financial worms weighed strongly in favor of *not* mentioning those records, much less introducing them into evidence. *Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir.1996) (noting that under *Strickland*, "decisions related to trial strategy are virtually unchallengeable"), *cert. denied*, 520 U.S. 1128 (1997)). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006).

The Court began its analysis of Claim I-C by noting that Feuget *admitted* he had procedurally defaulted this claim because his attorney failed to raise it in his Rule 37 proceeding.[28] Nevertheless, he contended that he should still be allowed to proceed with that claim under the Court's holding in *Martinez*. For all of the previously discussed reasons, the Court concludes that Feuget has failed to demonstrate that Claim I-C is "substantial," one of the essential elements necessary for him to be entitled to equitable relief under *Martinez*. Accordingly, the Court concludes that Feuget has procedurally defaulted Claim I-C and that it should be dismissed.

### (3)    Claim 1-D

Feuget argues that, during the sentencing phase of his trial, his trial counsel was ineffective for not presenting testimony from Feuget's friends and business associates.[29] Feuget fails to explain the *substance* of the testimony that allegedly was available, but not presented, or *how* it would have resulted in a shorter sentence than the fifteen year sentence he received. Feuget acknowledges this claim is

---

[28] While the Court has focused its analysis on the lack of prejudice to Feuget at the trial level, it is equally true that, even if the ineffective assistance of counsel claims asserted in I-C and I-D had been properly raised in Feuget's Rule 37 petition and then appealed, he would not have been granted relief for the same reason – it resulted in no prejudice to Feuget.

[29] The witnesses who allegedly would have "humanized" Feuget were Feuget's wife, Randy Stewart (an Arkansas state representative at the time), and Clayton Lindsey, a former business partner. *Doc. 1 at 16*.

31

procedurally defaulted and can only be heard on the merits if he proves the claim is "substantial" under *Martinez*. *Doc. 17 at 6*. *See Martinez* discussion *supra*.

Feuget's description of this claim is entirely conclusory and not supported by any facts. Because he has failed to identify the testimony that should have been offered and by whom, as well as how that testimony would have resulted in a reduced sentence, Feuget has failed to establish a "substantial claim" under *Martinez*.

Finally, even if such testimony existed and could have been presented during the sentencing phase of Feuget's trial, he has failed to establish: (1) how his trial counsel's performance, in making that *tactical decision*, was deficient; or (2) a reasonable basis for believing that his sentence would have been less if such evidence had been presented.

Neither the defense nor the prosecution put on any evidence during the sentencing phase of Feuget's trial. Because much of the information that would have been relevant to sentencing, from a defense standpoint, had already been introduced by Feuget to support his affirmative defenses of involuntary intoxication and mental disease or defect, it was already known to the jury at the time it deliberated Feuget's sentence.[30] Finally, the aggregate 15 year sentence that Feuget received was on the

---

[30] Four different psychiatrists testified about Feuget's mental illness and offered varying opinions regarding its severity, his prescription medication, and his ability or inability to appreciate the criminality of his conduct on January 15, 2010. Additionally, Feuget's wife, Michelle, testified

*low end* of the possible range of imprisonment he faced.[31]  In fact, the sentence was only 5 years more than the *lowest possible sentence the jury could have imposed*. This greatly undermines Fueget's vague and conclusory argument that, if the testimony of other witnesses had been presented during the sentencing phase of his trial, he would have received an even shorter sentence.  Thus, Fueget has failed to demonstrate a reasonable probability that, if this unknown testimony from these witnesses had been presented, he would have received a 10 year sentence instead of a 15 year sentence.

Because Feuget has not shown that Claim I-D is "substantial," he is not entitled to equitable relief under *Martinez*.  Accordingly, Feuget has procedurally defaulted Claim I-D and it should be dismissed.

### III.    Conclusion

For all of the foregoing reason, Feuget's habeas claims either fail on the merits

---

that she and Michael had been married for 21 years and had a 9 year-old daughter together.  She described how, during the week of the robbery, Michael had worked 16-20 hours a day and was not sleeping.  She also testified that, on the morning of the robbery, her husband was "glassy-eyed and had a "strange appearance."

[31]  On the two aggravated robbery counts, Feuget faced the possibility of 10 to 40 years, or life, on each count. The jury sentenced him to 15 years on each count.  On the felony theft charge, Feuget faced a sentencing range of not less than 5 years and not more than 20 years.  The jury sentenced him to the minimum sentence of 5 years. *Doc. 13, Vol. 5 at 1474-1476*.  The jury recommended that all sentences imposed run currently, and the judge accepted that recommendation.

or are procedurally defaulted. Accordingly, all of his claims should be dismissed, with prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1.     All of Petitioner Michael Feuget's habeas claims be dismissed, with prejudice, and his 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus, *Doc. 1*, be DENIED; and

2.     A Certificate of Appealability be DENIED, *see* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED this 23rd day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE